## BRUSH-McWILLIAMS COMPANY v. GLUDT.

(134 N. W. 741.)

**Real estate brokers — commission — right to, where contract terms as to payment are not complied with.**

> The court will not set aside a verdict for the defendant, in an action to recover commissions in a real estate transaction, where there is evidence tending to show that the original contract was for the sale of the land for cash, and the sale or offer to purchase was on time, and the only evidence of an acceptance of a modification of said contract by the owner of the land was to be derived from the fact that the agent went to his farm in an automobile, told him that he had sold the land on time and not for cash, and, after some minutes conversation, made out and handed to the owner his personal check for a cash payment of $1,000, saying that the balance would come the 1st of March, and then, within three minutes thereafter, drove away; the evidence further showing that the defendant, after talking the matter over with his wife, and on the same evening, returned the check to the agent with a letter, in which he refused to accept any modifications of his original contract.

Opinion filed January 30, 1912.

---

Note.—It seems to be pretty well established, as shown by a review of the authorities in a note in 21 L.R.A. (N.S.) 935, that the rule that a real estate broker, in order to be entitled to his commission, must find a purchaser able, ready, and willing to purchase on the terms prescribed in the contract between the principal and the agent, will bar the agent's right to his commission where the contract terms are not complied with, although the only deviation from those terms is as to payment in cash or the length of time given to make the various payments.

Appeal from District Court, Ward county; *Burke, J.*

Action by the Brush-McWilliams Company against Amil P. Gludt. Judgment for defendant, and plaintiff appeals.

Affirmed.

*Thompson & Schull,* for appellant.

*Palda, Aaker, Greene, & Kelso,* for respondent.

BRUCE, J.  This is an action to recover commissions on a real estate transaction. It is conceded by both sides that on or about the 10th day of October, 1909, the defendant agreed to and with one Mitchell to sell certain lands for cash; and that whatever the said Mitchell could get above the sum of $8,000 should be kept by him as commissions. The controversy is entirely over the question as to whether the defendant afterwards agreed to a modification of such contract, and agreed to accept a check for $1,000 and a promise to pay the balance in the spring. Although, too, the original contract was with one Mitchell, and no principal was disclosed, the claim is now made and the suit brought by the Brush-McWilliams Land Company, as the undisclosed principal of said Mitchell. The jury in the trial court found for the defendant, and that no such modified contract was made, and an appeal is taken by the plaintiff to this court.

The defendant, Gludt, testifies that on Sunday, the 10th day of October, 1909, Mitchell came to his place, and asked him if he wanted to sell his farm, and that he said that he had thought that he would sell the place if he got his price,—that is, cash price, "$8,000 spot cash,"—and that Mitchell said, "All right;" that the next time he saw Mr. Mitchell was on the 14th day of October, 1909, at his place, and that there were, with Mr. Mitchell, Mr. Mott and Mr. Ramsey; that he was working at the time in the potato patch; that while walking from the potato patch to the house Mr. Mitchell told him that he thought he had a purchaser for his place, but that the man did not have enough money to pay cash, and that he said, "Mr. Mitchell, you know that I would not sell this farm any other way than for cash, and I will never go into a deal on time;" that he then showed the party through the house, and that they left all together; that the next time he met Mr. Mitchell was on the 15th day of October, at about 9 or 10 o'clock in the morning; that Mitchell and Mott were in an automobile; that Mitchell

stated he thought he had a purchaser for the farm; that Mitchell wrote him out a check for $1,000, which he took; that Mitchell did not say who was going to be the purchaser, but said that Ramsey thought he would take the place; that he thought the check was on the purchase price, but supposed they were going to give him all cash immediately,— as quick as he gave them a deed; that they did not ask him to come into town; that Mitchell mentioned about the check being a cash payment, and that the balance would be given the 1st of March, and wanted to know if he would go into that kind of a deal, and that he said, "No;" that Mr. Mott argued with him, but that he told him he would not do it; that he had the check in his possession when Mitchell and Mott left his place; that he thought he would call them back, but they were gone; that he returned the check immediately, that evening, with a letter, saying that after due consideration he could not enter into the contract; that on October 25th Mr. Bates was at the house and said that Ramsey could not furnish the money, and offered him Mr. Ramsey's note and the Brush and McWilliams paper, which the defendant absolutely refused to take, that he told Mr. Bates that if he could not give him the cash the deal would have to be called off. This testimony is more or less corroborated by that of his wife.

Mitchell testifies to practically the same facts as to October 10th, and that he did not think that there was anything said at that time as to his representing the Brush-McWilliams Company; that on October 14th he and Mott and Ramsey and Batcher drove out in an automobile, and found the defendant, Gludt, in the yard, digging potatoes; that he told Gludt that he had a customer; that Gludt took Ramsey into the house; that nothing was said at that time as to the price of the land or the terms of the sale; that that night he and Mott and Ramsey and Bates closed up a contract, partly oral and partly in writing; that the next day he, together with Mott and Batcher, the driver of the automobile, went out to Gludt's place and had an interview with Gludt alongside of the automobile; that he said, "Good morning, Amil; you haven't any farm this morning more than a jack rabbit;" that the defendant said, "That is good;" that he said: " 'I have sold it to Mr. Ramsey, and he can pay you $1,000 to-day, and give you the other $7,000 the 1st of March.' 'Well,' he (defendant) says, 'I don't like that.' 'Well,' I told him, 'it was a pretty good sale.' 'Well,' he says,

'Where is Ramsey?' I says, 'He is gone home.' He says: 'I have posts and wire and things here; why didn't he wait and see me?' I told him he was in a hurry to get home. He said that he had a day or two more plowing to do, and he didn't know whether to stop or to keep on." The witness also testified that during this conversation he stepped over to the hood of the automobile and wrote out a check in favor of the defendant for the sum of $1,000, and handed it to him, and turned around and faced Mr. Mott and Mr. Batcher, and stated, "Now, then, here is $1,000, and your other $7,000 comes the 1st of March;" that defendant said that he didn't like that, but didn't know that it was best; that defendant spoke of the possibility of Mr. Ramsey not being able to come through, and that Mr. Mott spoke up and said that the sale was absolutely good, because the Brush-McWilliams Company would stand behind it; and the witness then said to the defendant, "Amil, you had better jump into the rig and go to town, and we will draw up a contract of those terms;" that the defendant said, "No, I cannot do it to-day, because I have got to help my neighbor thresh; but I will be in to-morrow;" that the witness then got up and left, together with Mr. Mott; that they were probably at Mr. Gludt's place two or three minutes after giving the check, and that Mr. Gludt made no offer to put the check back into his hands; that on October 25th he was again at Gludt's place; and that Gludt said: "Well, if we can get the woman to agree to it, I am willing, and she is in the house there."

The testimony of the plaintiff's other witnesses, Ramsey, Bates, and Mott, is mainly to the same effect, and none of these witnesses make out a stronger case for the plaintiff than does the witness Mitchell. On these facts the jury found for the defendant, and that the plaintiff had failed to prove an agreement by the defendant to sell his farm on time, and to pay commissions therefor. The verdict is certainly in accordance with the testimony of the defendant, Gludt, and the jury was at liberty to believe him, if it saw fit. We would be loathe to oppose our opinion to that of the jury in such a matter. In fact, we have no right to do so. We are, indeed, further of the opinion that the testimony of the plaintiff's witnesses themselves would not justify a verdict in the plaintiff's favor. We can see in their testimony no clear evidence of a contract, no meeting of the minds. To

hold otherwise, indeed, would open the door to all kinds of lawsuits, to all kinds of business laxity, and to all kinds of hardship. The only real evidence of an acceptance of the contract is the fact that the defendant retained the check in his hands for two or three minutes. He could not return it after that time, as the party had left. He took it into the house, talked the matter over with his wife, and sent it back the same evening. To hold that in a case of sale or supposed contract to sell to a man (Ramsey) for cash, the acceptance of a check and the holding it in one's hands for three minutes, which check even is not made out by Ramsey, but by one's own selling agent (Mitchell), is an acceptance of that check and a consent to a modification of the terms of the original agreement, especially in a case where the property is a homestead, and the wife should be consulted, and the officer is one's own selling agent, and not a hostile party, is too opposed to a sound public policy for us to entertain the proposition for a moment. On this theory of the case, it is immaterial whether instructions asked for by plaintiff as to the credibility of the witnesses should have been given or not. The plaintiff's own witnesses fail to prove the plaintiff's case. The judgment of the District Court is affirmed.

BURKE, J., being disqualified, did not participate.